FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 27, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>   v.<br>KYLE AFTON WARD,<br>    Defendant. | NO. 1:17-CR-2041-LRS<br><br>**ORDER DENYING<br>MOTION FOR NEW TRIAL** |

**BEFORE THE COURT** is Defendant's Motion For New Trial (ECF No. 118).

Pursuant to LR 7.1(h)(3)(B)(iv), the court concludes oral argument is not warranted and proceeds to determine the motion without oral argument.

**NEW TRIAL STANDARD**

On July 20, 2018, at the conclusion of a four day trial, Defendant was convicted by a jury of two counts of Arson in violation of 18 U.S.C. §§ 81, 1153. The jury rejected Defendant's argument that he should be found not guilty by reason of insanity.

Under Fed. R. Crim. P. 33(a), a "court may vacate any judgment and grant a new trial if the interest of justice so requires." "A district court's power to grant a motion for new trial is much broader than its power to grant a motion for

**ORDER DENYING
MOTION FOR NEW TRIAL-**     **1**

judgment of acquittal." *United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992). "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *Id.*, quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside a verdict, grant a new trial, and submit the issues for determination by another jury." *Id.*, quoting *Lincoln*, 630 F.2d at 1319. The burden of justifying a new trial rests with the defendant, *United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989), and a motion for new trial is directed to the discretion of the trial judge. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). Although the burden on a motion for new trial is not as demanding as that for a motion for acquittal, such motions are generally disfavored and should only be granted in exceptional cases. *United States v. DelToro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012).

## AUDIO RECORDINGS

Defendant was interviewed by agents of the Bureau of Alcohol, Tobacco and Firearms (ATF) on August 1 and 9, 2017. These interviews were recorded. Defendant contends that in support of his insanity defense, he should have been allowed to play to the jury the recordings of the entire interviews, rather than just the excerpts he was allowed to play. This issue was addressed on July 17, 2018, prior to jury selection, when the court denied Defendant's Motion In Limine (ECF No. 94). A final reconsidered ruling was rendered on July 18, which was memorialized in an "Order Re Defendant's Statements" filed on July 20. (ECF No. 106).

**ORDER DENYING MOTION FOR NEW TRIAL-**     **2**

Before jury selection commenced on July 17, the court was inclined to allow Defendant to offer only recordings of interview statements which his expert, Delton W. Young, Ph.D., had taken into account in formulating his opinion that Defendant was insane at the time he committed the arson. The court, however, reconsidered this ruling the following day while the Government was still presenting its case-in-chief such that Defendant was "allowed to present recordings of particular statements which Dr. Young identified in his expert report **and other statements which the court finds are relevant to his insanity defense**." (ECF No. 106 at p. 3; emphasis added).

Defendant played certain excerpts in his cross-examination of ATF agent Brian Bach on July 18. Transcripts of those excerpts were admitted into evidence as Defendant's Exhibits 308a, 309a, 310a, 311a, 312a, 313a, 314a and 315a. Defendant's Second Amended Exhibit List (ECF No. 90), filed on July 16, before the court ruled on Defendant's Motion In Limine seeking to have the jury hear recordings of the entire interviews, listed Exhibits 308a, 309a, 310a, 311a and 312a from Defendant's August 1, 2017 interview, and Exhibit 313a from his August 9 interview.[1] Defendant's Third Amended List of Trial Exhibits (ECF No. 99), filed on July 18, added Exhibits 314a and 315a from Defendant's August 1 interview. It appears that most of the excerpts identified by Defendant and played to the jury were also specifically quoted by Dr. Young in his October 10, 2017 expert report and considered by him in formulation of his opinion. While Dr. Young testified at trial that he also considered Defendant's August 9 interview, he acknowledged he did not specifically

---

[1] Defendant's first Amended Exhibit List (ECF No. 78) did not list excerpts, but only the full recordings (redacted and unredacted).

**ORDER DENYING
MOTION FOR NEW TRIAL-      3**

identify that interview in his report as having been considered. (ECF No. 110 at p. 36). His report does not quote from the August 9 interview. The fact Defendant played an excerpt to the jury of his August 9 interview (Exhibit 313a) suggests a recognition that he was allowed to play any interview statements relevant to his insanity defense, not just those statements specifically identified in Dr. Young's report.

Defendant was given the choice to play excerpts to any witness he chose, although he was allowed to play an excerpt only once during the course of trial.[2] While Defendant chose to play audio recording excerpts during his cross-examination of Agent Bach, he could potentially have identified and played any additional relevant excerpts during his examination of Dr. Young in his case-in-chief which commenced the following day, July 19. Defendant did not identify any additional excerpts he wished to play.[3] "The party urging admission of an excluded conversation must 'specify the portion of that testimony that is relevant to the issue at trial and that qualified or explains portions already admitted.'" *United States v. Webber*, 255 F.3d 523, 526 (8th Cir. 2001), quoting *United States v. Sweiss*, 814 F.2d 1208, 1212 (7th Cir. 1987).

The court fails to see how Defendant was prejudiced by not being allowed

---

[2] Defendant replayed two excerpts for the jury during closing argument, those being Exhibits 309a and 313a.

[3] Dr. Young and the Government's expert, Cynthia A. Low, Ph.D., both testified regarding particular statements made by Defendant during his interviews with ATF.

**ORDER DENYING MOTION FOR NEW TRIAL-    4**

to play to the jury, without interruption, recordings of the entire August 1 and 9, 2017 interviews. Defendant was given an adequate opportunity to identify what he considered to be all relevant portions of the interviews. Defendant seemingly argues he did not need to identify portions because the entirety of the interviews was relevant to his state of mind. That argument might carry more weight if the interviews had been conducted contemporaneously with the fires, but they were not. They were conducted one to two weeks after the fires which occurred on July 19 and July 24, 2017. The rule of completeness set forth in Fed. R. Evid. 106 "is intended to eliminate the misleading impression created by taking a statement out of context," but is not designed to make something admissible that should be excluded." *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982).

      The court believes it did not abuse its discretion in limiting the Defendant to portions of the interviews deemed relevant to his insanity defense. "Only when the evidence excluded is of such a critical nature that there is 'no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted' has the district court so abused its discretion." *Wilson v. City of Des Moines*, 442 F.3d 637, 641 (8th Cir. 2006), quoting *Stephens v. Rheem Mfg. Co.*, 220 F.3d 885 (8th Cir. 2000). To have not imposed that limitation would have invited the jury to speculate about the Defendant's sanity based on considerations outside of the mental health framework testified to by the experts. Finally, it is worth noting that a number of the excerpts offered by the Government arguably were probative of Defendant's mental health as they too consisted of "bizarre," "irrational" and in some instances, delusional, responses from Defendant, such as his belief he was being controlled by others. (See *e.g.*, Government's Exs. 162A, 163A and 165A).

**ORDER DENYING MOTION FOR NEW TRIAL-**     5

**INSANITY DEFENSE JURY INSTRUCTION**

The court gave the jury the Ninth Circuit's model jury instruction on the insanity defense. (Instruction No. 21 at ECF No. 107). Model Instruction 6.4 was approved again most recently in June 2015. It provides that a defendant is insane only if at the time of the crime charged he "had a severe mental disease or defect; and . . . [a]s a result, . . . was unable to appreciate the nature and quality or the wrongfulness of [his] . . . act."[4] It does not specify that "wrongfulness" means moral wrongfulness. The model instruction tracks the language in 18 U.S.C. § 17 of the Insanity Defense Reform Act (IDRA) of 1984.

The court declined to modify the model instruction as proposed by Defendant. (Defendant's Proposed Instruction No. 2 at ECF No. 91). Defendant proposed to add the following language:

> "Wrongfulness" means moral wrongfulness rather than criminal wrongfulness. In other words, a defendant is unable to appreciate the wrongfulness of his act if he knows his act is criminal but commits the act because the effects of the defendant's severe mental disease or defect lead him to believe the act is morally justified.

For purposes of the insanity defense, "wrongfulness" means moral wrongfulness rather than criminal wrongfulness. *United States v. Sullivan*, 544 F.2d 1052, 1055 (9th Cir. 1976), citing *Wade v. United States*, 462 F.2d 64 (9th Cir. 1970). According to *Sullivan*, "someone who commits a criminal act under a false belief, the result of mental disease or defect, that such act is morally justified, does indeed lack substantial capacity to appreciate the wrongfulness of his conduct . . . ."

Citing *Sullivan*, Defendant contends this court erred in failing to give his proposed clarifying instruction since the jury "was left to its own devices to determine what 'wrongfulness' meant." In *Sullivan*, because the jury "had been

---

[4] http://www3.ce9.uscourts.gov/jury-instructions/node/381.

**ORDER DENYING
MOTION FOR NEW TRIAL-         6**

exposed to confusing, if not opposing views" on the proper meaning of "wrongfulness," the Ninth Circuit concluded the trial court had erred in failing to instruct the jury that "wrongfulness" means moral wrongfulness rather than criminal wrongfulness.

Here, Defendant's jury was not exposed to confusing or opposing views of the proper meaning of "wrongfulness." See *U.S. v. Sibley*, 595 F.2d 1162, 1166 (9th Cir. 1979) ("jury was not confronted with diametrically opposing views as to whether wrongfulness meant criminal or moral"). Both experts testified about Plaintiff's ability to distinguish "right" from "wrong" as a moral matter. Dr. Young testified that while Defendant understood the nature and quality of his actions in setting the fires, he was unable to appreciate and perceive the wrongfulness of those actions. (ECF No. 110 at p. 53). According to Dr. Young, the Defendant "knew perfectly well what he was doing in a rudimentary sense, that he was lighting this building on fire, and it's going to burn down and be destroyed, but he thought he was entirely justified in doing so, and that it was the **right thing to do**" because of "his delusional beliefs about the Iluminati syndicate and its effect on him and his family." (*Id.* at pp. 65-66; emphasis added). Dr. Low reached the opposite conclusion, but she also considered the issue to be Defendant's ability to appreciate and perceive the moral wrongfulness of his actions. Citing Dr. Low's testimony among other things, counsel for the Government contended in her closing argument to the jury that Defendant knew the difference morally between right and wrong. Counsel for the Government specifically acknowledged to the jury that moral wrongfulness is the insanity defense standard. Counsel for the Defendant reiterated this to the jury in his closing argument, emphasizing to the jurors that as a matter of law, the issue was moral wrongfulness, not criminal wrongfulness, and that Defendant thought he was morally justified in

**ORDER DENYING MOTION FOR NEW TRIAL-  7**

committing the arson.[5]

During its deliberations, the jury did not ask for a clarifying instruction about the meaning of the word "wrongfulness" contained in the model instruction provided to it. Defendant points to nothing stated by the court or counsel that would have led the jury to think the standard was criminal wrongfulness. Because, as acknowledged by Defendant in his reply brief (ECF No. 120 at p. 5), the evidence presented clearly showed Defendant knew that setting the fires was illegal and a crime, the jury understood criminal wrongfulness was not the insanity defense standard. Were it otherwise, an insanity defense instruction would not have been given and the jury would not have had the option of finding the Defendant not guilty by reason of insanity.

This court acknowledges that in *U.S. v. Segna*, 555 F.2d 226, 233 (9th Cir. 1977), the Ninth Circuit held "the district court must, when properly requested, instruct on the issue [of wrongfulness] if the record contains evidentiary support for the defendant's theory that, although he realized the offending act was illegal, because of mental disease he possessed a false belief that the act was morally justified." It is noted that the *Sullivan*, *Segna*, and *Sibley* cases were all decided before enactment of the IDRA in 1984. Since enactment of the IDRA,

---

[5]

See *U.S. v. Sibley*, 595 F.2d 1162, 1165 (9th Cir. 1979)(in closing, defense counsel was able to, and did fully and with clarity, argue defendant did not appreciate the moral wrongfulness of his actions; therefore, failure to give instruction did not deprive defendant of his opportunity to have the defense theory presented to the jury).

**ORDER DENYING MOTION FOR NEW TRIAL-         8**

the Ninth Circuit has not had occasion to revisit the issue of the meaning of wrongfulness and if and when a clarifying, amplifying instruction must be given.[6] Nor is the court aware of any district courts within the Ninth Circuit which have dealt with these issues.[7]

"It is not error to refuse a proposed instruction as long as the other instructions in their entirety cover the defendant's theory of the case." *Sibley*, 595 F.2d at 1165. The court concludes it did not commit error in refusing Defendant's proposed instruction because the other instructions it gave, in their entirety, covered the Defendant's theory of the case. As such, Defendant was

---

[6] *People of Territory of Guam v. Alvarez*, 763 F.2d 1036 (9th Cir. 1985), involved Guam's insanity statute, not the IDRA.

[7] In *U.S. v. Ewing*, 494 F.3d 607, 616-17 (7th Cir. 2007), the Seventh Circuit considered reliance on *Segna* problematic because it predated IDRA; interpreted "wrongfulness" based on the *Model Penal Code's* definition of legal insanity which Congress did not adopt in enacting IDRA; and its subjective definition of "wrongfulness" had been rejected by a number of courts. The Seventh Circuit concluded that "wrongfulness" for the purposes of IDRA "is defined by reference to objective societal or public standards of moral wrongfulness, not the defendant's subjective personal standards of moral wrongfulness." *Id*. at 617.

**ORDER DENYING MOTION FOR NEW TRIAL-** 9

not prejudiced.

**CONCLUSION**

The evidence presented in this case does not preponderate sufficiently heavily against the verdict rendered and therefore, the court is not persuaded that a serious miscarriage of justice occurred. Accordingly, Defendant's Motion For New Trial (ECF No. 118) is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel of record.

**DATED** this ___27th___ day of August, 2018.

*s/ Lonny R. Suko*

_____
LONNY R. SUKO
Senior United States District Judge